SHANNON, Chief Judge.
The appellants-plaintiffs bring this appeal from a summary final judgment ad *898 verse to them in a tort action against the appellees.
On January 13, 1960, the parcel of real estate here involved was owned by Ray J. Iverson and Willie Mae Iverson, his wife. On that date they entered into a lease with C. J. Towner, in which the lessee, Towner, covenanted, in part, that he would:
“5. Not assign this lease, nor under-let said premises, nor any part thereof, without the written consent of the Lessor, provided, however, such consent shall not be unreasonably withheld;
* * * * * *
‘7. Make no alterations or additions in or to said premises without the written consent of said Lessor, which consent shall not unreasonably be withheld;
* * * * * *
“9. Permit the Lessor to enter upon said premises at all reasonable times to examine the condition of the same; * * * »
Ray J. Iverson and Willie Mae Iverson covenanted, in part, as follows:
“l. Maintain the demised premises in good repair and tenantable condition during the continuance of this lease, except in case of damage arising from the negligence of the Lessee or its agents or employees; * * *.
“2. Indemnify and save the Lessee harm from and against any loss, damage and liability occasioned by, growing out of, or arising or resulting from any default hereunder, or any tortious or negligent act on the part of the Lessor, the Lessor’s agents, or employees ; * * *
Among the mutual covenants, we are concerned with the following:
“5. This lease and all the covenants, provisions and conditions herein contained shall inure to the benefit of and be binding upon the successors and assigns of the parties hereto; provided, however, that no assignment by, from, through or under the Lessee in violation of any of the provisions hereof shall vest in the assigns any right, title or interest whatsoever; * * *
The Sun Dance Enterprises, Inc., was organized on the 24th day of February, 1960, and the Brown-Towner Corporation was also organized on the same date. On July 15, 1960, the lease which had been in the name of C. J. Towner was assigned to Brown-Towner Corporation. As of September 8, 1960, the Brown-Towner Corporation changed its name to Southern Ranch, Inc. C. J. Towner was a stockholder, an officer, and a director in both of these corporations.
The complaint, as amended, was filed against the Iversons, James E. Brown, C. J. Towner, and William F. Whitehouse. We are concerned only with the summary judgment in favor of the Iversons and C. J. Towner. The complaint goes on to state that Evelyn E. Lovett was injured on or about August 6, 1960, at 7:45 P.M., at which time she was using the premises (for which the lease was given) as an invitee for the purpose of attending a party arranged and conducted by the various defendants. The premises that were leased to Towner in the first instance were being used for parties, entertainment, hay rides, and the like, for paying guests. The complaint states that:
“6. That at the said time the plaintiffs again mounted the hay wagon which then proceeded in an easterly direction toward the main ranch.
“7. That the wagon driver, the sole employee of the defendants on the wagon, would, from time to time, warn the passengers to lift their feet into the wagon when a dangerous point in the trail was reached.
“8. That the said driver, after proceeding in an easterly direction for approximately twenty minutes, drove the *899 wagon through an opening in a barbed-wire fence on the premises which the defendants had made by removing two fence posts from the ground and laying them beside the trail thereby creating a highly* dangerous, hazardous condition by permitting large loops of barbed wire, attached to the fence posts, to extend upward and outward across the trail.
“9. That the defendants’ employee-driver negligently failed and refused to warn the plaintiff EVELYN E. LOV-ETT of the said hazardous condition which was known to the defendants and unknown to the plaintiff and negligently proceeded to drive the said wagon through the gap in the fence at an excessive rate of speed. * * * ”
The trial judge entered a memorandum of pretrial conference in the case which states, in part, as follows:
“In this case suit is brought claiming bodily injuries to the wife. The husband makes claim for damages sustained by reason of the injuries to his wife. It is charged that plaintiff wife was riding on a wagon when a loose barb wire caught her leg an injured her. It is charged that the driver of the wagon negligently failed and refused to warn the plaintiff wife of the hazardous condition which caused the injuries, and negligently drove the wagon at the place of the injury at an excessive rate of speed.
“The case is now proceeding against the defendants, Iverson and wife, and Towner. Defendants deny that they had any direct connection with the operation of the wagon, and deny that the driver was their employee. They likewise deny that the employee was negligent, and deny that the damage happened as claimed.”
Affidavits and depositions were considered by the trial judge before entering the summary final judgment. From the briefs and arguments of the parties, we deem the issues to be whether or not the landlords under a covenant to repair are liable for the injury, and whether or not C. J. Town-er is also liable as a lessee, or otherwise.
The affidavits and depositions are quite voluminous, but when they are looked at with the view toward determining whether or not material issues of fact are existent, it is readily noted that the issues are clear and the facts pertinent thereto are few. With this in mind, we shall discuss them in the order stated above.
The landlords were sued for the negligent operation of a vehicle used by the lessee in its business. Plaintiff was injured because the driver of the team drove too fast and came too close to one of the fence posts so that the plaintiff’s foot was caught on a piece of barbed wire. It is the contention of the plaintiffs that the liability of the Iversons is predicated on their failure to repair the fence. At no place in the affidavits or depositions are we advised as to who made the gap in the fence, whether it was made by the Iversons or by the lessee. At any rate, the gap was about twelve feet wide and the wagon upon which the plaintiff was riding was approximately eight feet wide. The wagon had gone through it on its outward journey and at the time of the accident was coming back through it. The Iversons had never been called upon to repair this entry and we do not deem it necessary to decide whether or not the landlords, by reason of their lease, were required to repair this item.
As we view it, the accident was proximately caused by the actions of the driver of the wagon. The plaintiffs argue that by reason of the covenant the landlords are liable, citing Florida cases, as well as decisions from other jurisdictions, in support of their position. For instance, they cite the case of Propper v. Kesner, Fla.1958, 104 So.2d 1, wherein it is said:
“While it is clear that a landlord may be liable to his tenant for negligently *900 making agreed repairs, Harper & James on Torts, Vol. 2, p. 1514, the landlord’s liability for nonperformance of a covenant to repair deserves some comment. Under earlier law, the rule was general that the landlord is not liable for an outright failure to repair, but there is now a pronounced trend toward the view that the landlord may be liable under such circumstances. See Annotation, Breach of Lessor’s Agreement to Repair as Ground of Liability for Personal Injury to Tenant or one in Privity with Latter, 163 A.L.R. 300 et seq., and cases cited therein. The modern view has been adopted in the Restatement of Torts, § 357, and we do not hesitate to follow it. It would seem inconsistent to us to hold in this context that the landlord is liable for misfeasance hut that he may escape liability by nonfeasance.”
The above case was decided in July, 1958. In our court in December, 1958, in the case of Wallace v. Schrier, Fla.App.1958, 107 So.2d 754, Judge Allen, for the court, in a somewhat similar case, stated:
“There is wide conflict of opinion among the courts of last resort, as will be seen in the annotation appearing in 163 A.L.R., page 300, et seq. The lower court was familiar with the two views held outside of this State, and in the absence of authorities in Florida, adopted the view which the appellees, in their brief, refer to as the ‘majority view.’
“The order of the trial court on the defendants’ motion to dismiss the second amended complaint read, in part, as follows:
“ ‘The court has examined 163 A.L. R., page 315, and is impressed with the authorities holding that a contract to repair imports knowledge to the owner that repairs are needed and, therefore, holds the owner liable. In jurisdictions so holding it is on the theory of a tort arising out of contract. The Court is of the opinion that such is not holding in this jurisdiction.’ ”
Upon authority of Propper v. Kesner, supra, this court held that the second amended complaint stated a cause of action.
We agree with the two cases that we have discussed, but we hold that the sole proximate cause of the injury to the plaintiff was the negligent conduct of another person who was not in the employment of, nor had any connection with, the Iversons.
We next review the facts concerning C. J. Towner. As we stated earlier, he was a stockholder and an officer of the corporations. The Iversons did not know that he had assigned the lease before the accident. On the night in question Towner was on the premises and had actually accompanied the party to a picnic place and was on his way back when Evelyn E. Lovett was injured. At the time of the accident he was riding some distance ahead on horseback and was not at the scene of the accident, nor did he know anything about the same until he was told about it ten or fifteen minutes later. The wagon driver was an employee of Sun Dance Ranch, Inc., and received his pay from them. Had Towner been driving the wagon, the case should properly have been submitted to a jury, but his liability as the original lessee of the premises has not been made to appear. The trial judge stated in his order granting the motions for summary judgment:
“ * * * The theory of plaintiffs’ action as stated in the complaint is that defendants arranged and conducted the wagon ride; that the wagon driver was the ‘sole employee of the defendants’; that plaintiff wife was injured as a result of the negligent operation of the wagon by such driver. The record shows without dispute that none of the defendants operated the business in question and were not, individually, responsible for the conduct of the wagon ride. The driver of the wagon was not their employee. It is the view of *901 the court that, according to the record, none of the defendants, individually, committed or participated in the wrong described in the complaint.”
From the depositions and affidavits filed in connection with the motions for summary judgment, we think that the trial court was eminently correct in its views, and, error not having been made to appear, we must affirm.
Affirmed.
KANNER and WHITE, JJ., concur.